UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MYRON SMITH | CIVIL ACTION NO. 03-1948-P |
| versus | JUDGE STAGG |
| WARDEN BURL CAIN, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Myron Smith ("Petitioner") of first degree murder, but it spared him a death sentence, and the trial court imposed a mandatory life sentence. Petitioner pursued without success a direct appeal and a state post-conviction application. He then filed this federal petition for writ of habeas corpus. It is recommended, for the reasons that follow, that the petition be denied.

**Challenges for Cause**

Petitioner argues that the trial court erred in denying his challenges for cause to potential jurors Thomas and Alfrey. The state appellate court pointed out that a careful examination of the record showed that the court actually granted the challenges for cause later in the proceedings when the defense re-urged them. State v. Smith, 740 So.2d 675, 684 (La. App. 2d Cir. 1999), writ denied, 785 So.2d 840 (La. 2001). Petitioner nonetheless continues to press this argument as a grounds for habeas relief. The record shows that

Thomas and Alfrey were, as stated by the appellate court, excused for cause. Tr. 785-86, 857, 1167-70, and 1177-78.

**Parole Eligibility**

Petitioner was charged with first degree murder, which carried possible sentences of death or life imprisonment without benefit of probation, parole or suspension of sentence. Another possible verdict was manslaughter, which carried a maximum sentence of 40 years imprisonment but permitted the possibility of parole. The prosecutor, during jury selection, described the potential penalties, including the possibility of parole following a manslaughter sentence. Tr. 366.

Defense counsel moved for a mistrial on the grounds that the prosecutor should not have informed the jury of parole eligibility on the lesser charge. The trial court denied the motion. Tr. 367-69. The state appellate court noted that there were Louisiana decisions that prohibit discussion of the possibility of an offender's future release, but those cases also hold that not every mention of the possibility of pardon or commutation of sentence constitutes reversible error. The statement made by the prosecutor in this case was accurate, included in a statement of the possible verdicts, made only once to one panel of prospective jurors, and made six days before the trial began. The court found no prejudice or reversible error in that setting. Smith, 740 So.2d at 683.

Habeas relief on a claim that was adjudicated on the merits in state court proceedings is not available unless the petitioner shows that the adjudication of the claim resulted in a

decision that was contrary to, or involved an unreasonable application of, "clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254. A decision by a lower court, even if compelling and well reasoned, cannot satisfy the clearly established Federal law requirement. Salazar v. Dretke, 419 F.3d 384, 399 (5th Cir. 2005).

There are several state and lower federal-court decisions that have deemed improper argument by a prosecutor about the possibility of pardon or parole after the defendant is sentenced. Those decisions require a showing of prejudice, and prejudice is less frequently found in non-capital cases. See Shipley, Prejudicial Effect of Statement of Prosecutor as to Possibility of Pardon or Parole, 16 A.L.R. 3d 1137. Petitioner has not, however, identified a *Supreme Court* decision that clearly establishes federal law in this regard that would entitle him to relief. Furthermore, any such decision would almost certainly require a showing of prejudice. The state appellate court's decision that there was no prejudice was not objectively unreasonable, so habeas relief is not permitted on this issue.

**Sufficiency of the Evidence**

Petitioner argues that the evidence was not sufficient to support his conviction for first degree murder. He primarily attacks the basis for finding that he was the shooter and that he had the requisite specific intent to kill or cause great bodily harm upon more than one person.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

The Louisiana appellate court invoked, recited and applied the Jackson standard on Petitioner's direct appeal. Thus, its decision was not "contrary to clearly established Federal law," so Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" thereof. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the State court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

The evidence, recited in great detail in the state appellate court's decision, shows that Petitioner and several friends, apparently members of the Bloods gang, left a party together

and were driving to one of their homes in the Cherokee Park neighborhood when members of a rival gang, the Crips, fired shots at them from the front yard of the Johnson family's house. The rear window of the car was shattered, but no one was injured.

After the shots were fired, Petitioner jumped from the car and ran to a relative's nearby home. He left after a short time and went to the home of Tyrone Pickrom, who had also been in the car. A witness testified that Petitioner was wearing a white Kansas City Chief's jacket when he entered the home, and Pickrom was wearing a red San Francisco 49'ers jacket. The two of them took an assault rifle and headed toward the Johnson home. The Crips who had been in the front yard of the Johnson home had departed about 10 minutes earlier in their Cadillac. Petitioner later admitted that he knew several children between the ages of 10 and 17 lived in the home and that there was a light on inside the house. There were, in fact, seven children inside the home, including Andre Brooks, age 14.

The children were in the living room watching television when one of them, Degetrion Scott, looked out the front window and teasingly told the other children that, "They're fixing to shoot." A few minutes later, Degetrion looked out the window and saw someone wearing a white Kansas City Chief's jacket and holding a rifle. He then yelled, "They're going to shoot," and grabbed two of the children to protect them. The Johnson house was hit by two separate barrages of gunfire, several seconds apart. Petitioner admitted to firing two of the rounds before handing the rifle to Pickrom. When it was over, Andre Brooks was dead from a single gunshot wound to the head.

Petitioner and Pickrom returned to Pickrom's home. One witness testified that Petitioner returned holding the rifle, but another witness testified that she saw only Pickrom with the rifle. The two shooters were, at their requests, driven to locations outside the neighborhood.

Steve Flakes, the Pickrom's next-door neighbor, testified that Petitioner later called him and asked him to take the rifle from the storage room at the Pickrom house and put it in a shed. Flakes said that Petitioner told him that someone had been shot and that he had fired the gun two times before handing it to Pickrom, who fired the rifle until the magazine was empty. Flakes also received a call from Pickrom, who told him that he thought he had killed someone.

Bonita Stinson, a friend of Petitioner's, testified that she was the owner of the Chief's jacket and had loaned it to Petitioner before the shooting. Several days later, she gave Petitioner a ride. Petitioner was wearing the jacket but, after Stinson dropped Petitioner off, she found the jacket on the floorboard in the back seat of her car, mixed with other clothes.

Police obtained an arrest warrant for Petitioner who, when he heard police were looking for him, went to the police station. He admitted that he was wearing a white Chief's jacket on the night of the shooting. In his first account of the evening, Petitioner portrayed himself as being at a friend's house at the time of the shooting and not knowing about the shooting until he received a phone call about it. Petitioner changed his story after police told him that they could place him at the crime scene. He then admitted accompanying Pickrom

to the house, but he claimed to believe that Pickrom was merely going to tell the residents not to allow the Crips around any more. Petitioner said that when he heard the first shot, he got scared and ran off.

Pickrom was also arrested and charged with first degree murder. He was later tried on a lesser charge of second degree murder in a separate trial. He was convicted of manslaughter and sentenced to 30 years. He was called to testify at Petitioner's trial, but invoked the Fifth Amendment.

In relevant part, La.R.S. 14:30 defines first degree murder as the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm upon more than one person. The state appellate court found that there was sufficient evidence of intent to kill or inflict great bodily harm upon more than one person because there was evidence, which a jury could have accepted, that Petitioner took a loaded rifle and shot it multiple times into a house where he knew several children lived and there was a light on inside. The court also rejected arguments that, because co-defendant Pickrom was found guilty of the lesser charge of manslaughter, Petitioner's conviction should be reduced to that same charge.

There was sufficient evidence, for the reasons provided by the state appellate court, on which a rational juror could have returned a first degree murder conviction in Petitioner's trial. To the extent one might question that conclusion, there is certainly no basis to find that the state court's adjudication of the sufficiency of the evidence issue, the subject of a lengthy and thoughtful discussion of the issues, result in a decision that was so wrong as to be an objectively unreasonable of <u>Jackson</u>. With respect to the effect of Pickrom's manslaughter

conviction, Petitioner has not identified any Supreme Court precedent that is violated by Petitioner's conviction of a greater offense when he was tried separately.[1] Habeas relief is not warranted on these issues.

**Denial of Fair Trial**

Petitioner lumps several arguments under the heading of Denial of a Fair Trial, many of which are merely repetitive of his sufficiency of evidence argument. For example, Petitioner contends that he was denied his right to a fair trial because the prosecutor chose to charge him with first degree murder despite the evidence (which Petitioner urges does not support the charge). Petitioner also makes a conclusory assertion that the indictment was insufficient to charge first degree murder, but habeas relief is available only if a charging instrument was so defective that the convicting court had no jurisdiction. Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988). State law is the reference for determining sufficiency of an indictment, and if the issue is presented to the state's highest court, then consideration of the question is foreclosed in federal habeas. Morlett, supra; McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994). Petitioner also makes a brief assertion that the court's instruction to the jury was erroneous, but he does not articulate any particular deficiency. Relief is not warranted with respect to these arguments.

---

[1] Some courts have discussed a potential claim or mitigation argument in opposition to a death sentence that arises in circumstances where an equally guilty co-defendant has escaped the death penalty, See, e.g., Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995), but a death sentence was not imposed on Petitioner.

**Confession**

Petitioner implies, though he does not claim forthrightly, that he invoked his right to counsel when he surrendered himself to the police. His later confession, he argues, is therefore subject to suppression under <u>Edwards v. Arizona</u>, 101 S.Ct. 1880 (1980). Petitioner, who was represented at trial by a very experienced defense attorney, did not file a motion to suppress on this ground, and this issue was not raised on direct appeal. Petitioner did raise the issue in his pro se application for post-conviction relief (Tr. 2418), but neither the trial court nor the state appellate court mentioned the argument in their decisions. Tr. 2424-25 and 2711. The Supreme Court of Louisiana denied writs without comment. Tr. 2713.

The state points out that there was a voluntariness hearing at which Detective D. A. Lott and Robert Rambin testified that Detective Rambin advised Petitioner of his <u>Miranda</u> rights and that Petitioner signed a waiver card (that was introduced into evidence). There was no statement, or even suggestion from defense counsel, that Petitioner had invoked his right to counsel, and the court held that the statement was voluntary. Tr. 1954-61. Petitioner's conclusory argument that his waiver of the right to counsel is invalid has not been shown to have any factual basis, so the rejection of this claim by the state courts (despite the lack of discussion of the issue in their decisions) was not an objectively unreasonable application of <u>Edwards</u>.

**Prosecutorial Argument**

The prosecutor, B. Woodrow Nesbitt, Jr., in his opening statement, urged that there was sufficient evidence to warrant a finding of guilt and the imposition of the death penalty. The intent of his presentation is not always clear but, early in the argument, he appeared to imply that it was a bad thing that, after similar crimes, "six months later, he'll be in jail. A year later he's forgotten." He asked the jury to think about that (whatever it means) if the trial progressed to deciding punishment. Tr. 1319. Near the end of his opening statement, the prosecutor said:

> I want you to remember all the circumstances, all of the actions, all of the shenanigans, all of what was done and said when you get down to the question of what punishment is just; because you can walk away from it. You can lack the integrity and lack the courage and you cannot do what justice will demand your duty is, to tell this killer that you and people like you who do what you did here get the death sentence; or, or, six months later they'll say, 'he'd be in jail.' Who is Mr. Smith?

Tr. 1334-35. Defense counsel moved for a mistrial on the grounds that the opening statement was really more of an opening and closing *argument* that often appealed to prejudice and public opinion. The judge denied the request but agreed to admonish the jury that the statements from the attorneys were not evidence. Tr. 1336-38.

During closing argument, the prosecutor stated: "These people are self-styled thugs and gangsters, and they should be treated as such." He went on to talk about the Crips and Bloods, which he referred to as the Drips and Cruds. He then said that "When you convict this guy of first degree murder, they are going to get the message. And all of these other drips and cruds sitting - - ." Defense counsel then objected and moved for a mistrial on the

grounds that the "send a message" argument was improper. The trial judge denied the motion but said he would instruct the jury not to make its decision based upon sympathy or prejudice. Tr. 2072-74.

Petitioner urges that the denial of a mistrial based on these matters entitles him to habeas relief. He presented these issues on direct appeal, and the state appellate court discussed them at length. It ultimately found that the trial court's handling of the matters should not be disturbed absent a manifest abuse of discretion, and that the statements did not cause prejudice or prevent a fair trial. Smith, 740 So.2d at 685-87.

Improper jury argument by the state does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986). The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Turner v. Johnson, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997).

The two arguments attacked by Petitioner, tempered by the trial judge's admonishments and instructions, fall far short of providing a basis for vacating the conviction and ordering a new trial. There was plentiful evidence for the jury to base its decision upon, and there is no reasonable basis to conclude that the conviction would not have occurred but for the challenged remarks. Most important, the state court's considered resolution of the issues did not result in an objectively unreasonable application of Darden or other clearly

established Supreme Court precedent. The state court did not cite <u>Darden</u>, but its decision was based on similar state court precedent. That is satisfactory. <u>See</u> <u>Taylor v. Cain</u>, 190 F.3d 538 (5th Cir. 1999) (unpublished) (denying COA when Louisiana courts reasonably applied a state-law precedent that is consistent with <u>Darden</u>).

**Ineffective Assistance of Counsel**

Petitioner urges that he was denied effective counsel because his attorney did not conduct an adequate investigation. Petitioner contends that counsel did not consult with several witnesses "for development of exculpatory material." He makes similar conclusory assertions that counsel should have consulted with a police officer "for development of exculpatory material that Andre Brooks was killed by a stray bullet and not a bullet shot from a weapon with specific intent to kill" and should have consulted the firearms expert who testified for the prosecution to develop alleged exculpatory material that the bullet and jacket identification was submitted at trial to mislead the jury. Petitioner goes on to make a host of similar claims that counsel should have developed information from Officers Lott and Rambin that established a lack of waiver of the right to counsel, did not object to an erroneous jury instruction, and did not effectively test the prospective jurors for qualification, resulting in an allegedly dishonest panel of jurors.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not

functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068.

Petitioner presented these arguments on post-conviction application. The trial judge characterized the arguments as "blanket statements" that did not, as required by state law, provide with reasonable particularity the factual basis necessary for relief. He also observed that Petitioner had failed to show that exculpatory material would have been obtained through the efforts Petitioner said counsel should have made. The judge also specifically rejected the claim that counsel conducted inadequate voir dire. Tr. 2424-25. The state appellate court denied a writ application, noting:

> The trial court also correctly found that the claims of ineffective assistance at trial were conclusory. The applicant makes no showing that, for the alleged errors of counsel, the outcome of the trial would probably have been different."

Tr. 2711.

Petitioner has now repackaged his conclusory arguments and presented them in his federal habeas petition. He has yet to articulate sufficient facts to warrant further inquiry with respect to the performance prong. When an applicant has failed to develop the factual basis of a claim in the state court proceedings, the federal courts shall not hold an evidentiary hearing on the claim unless the applicant meets certain strict requirements, none of which have been shown to apply. 28 U.S.C. § 2254(e)(2). Even before the enactment of that

statute, federal courts would not hold an evidentiary hearing on a claim unless the petitioner alleged specific facts that would entitle him to relief, as opposed to mere bold assertions on a critical issue that were unsupported by anything in the record. Johnson v. Scott, 68 F.3d 106, 112 (5th Cir. 1995). Similarly, Petitioner has not articulated facts that suggest he was prejudiced by counsel not conducting the interviews or taking the other steps listed by Petitioner. His suggestions that witnesses who provided strong evidence of guilt would somehow have delivered exculpatory evidence if only counsel would have consulted them are pure speculation, and his other objections to counsel's performance are lacking in support by any specific facts in the record.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that Petitioner's complaint be **dismissed with prejudice.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 14th day of August, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE